IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DENTAL MONITORING, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-647 (WCB) |
| | ) | CONSOLIDATED |
| v. | ) | REDACTED - |
| | ) | PUBLIC VERSION |
| GET-GRIN INC., | ) | |
| | ) | |
| Defendant. | ) | |

**LETTER TO THE HONORABLE WILLIAM C. BRYSON FROM MEGAN E. DELLINGER REGARDING DEFICIENCIES IN GET-GRIN INC.'S RESPONSES TO <u>DENTAL MONITORING'S INTERROGATORY NOS. 2, 10, 15, AND 16</u>**

OF COUNSEL:

George F. Pappas
Einar Stole
Laura Martin
Jia Hui (Jeffrey) Jiang
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Michael E. Bowlus
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7014

Sinan Utku
COVINGTON & BURLING LLP
22 Bishopsgate
London, EC2N-4BQ
+44 20 7067 2000

December 8, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff*

Dear Judge Bryson:

Plaintiff Dental Monitoring ("DM") submits this letter pursuant to the Court's oral order. D.I. 81. DM seeks an order compelling Defendant Get-Grin Inc. ("Grin") to provide complete responses to DM's Interrogatory Nos. 2, 10, 15, and 16. As explained below, the interrogatories seek information highly relevant to this patent infringement case, including information relating to the development, testing, design, and operation of the accused products, among other information. Grin has either not responded to or has provided incomplete information for these interrogatories.

## I.  Introduction

DM's solutions utilize artificial intelligence ("AI") to help dental professionals provide more frequent, individualized patient care, virtually. DM's AI can analyze, detect, and report on 130 oral events using images taken by a patient with a smartphone. DM's innovations are protected by the patents at issue in this case, including U.S. Pat. Nos. 10,755,409 and 11,314,983. These patents generally relate to methods for acquiring and analyzing images of a patient's teeth using a deep learning device. D.I. 30 (first amended complaint, asserting '409 and '983 patents).

The accused products include (1) the Grin Scope, which is a cheek retractor to facilitate capturing images of a user's teeth at home; (2) the Grin app, which is used with the scope; (3) the AI Scan Guide, ███████████████████████████████████████████████; and (4) the AI Scan Summary, ███████████████████████████████████████████████████████████████████████████████. Exs. 1-2 (infringement contentions). Grin publicized these products via a press release issued in 2021, stating that "the AI-enhanced Scan Guide augments the Grin Scope and self-scan process to create the most comprehensive orthodontist-ready video of a patient's mouth," and that "[t]he AI Scan Summary *uses deep-learning* to automatically select the best intraoral visuals from patients." Ex. 3 at 1.

## II.  Interrogatory Nos. 10 and 16 Seek Information Related to Testing and Development

**Interrogatory No. 10** requests the following: "Describe in detail all of Your efforts to develop the Accused Products and/or Grin Service, including any research, design, manufacture and testing of the Accused Product and/or Grin Service or that led to the Accused Product and/or Grin Service; and identify the Person(s) most knowledgeable about those development efforts." Ex. 4 at 24. Discovery on these subjects is critical to understanding the functionality of the accused products; where and when infringing methods may have been performed; who may have been involved in performing claimed method steps or using an infringing apparatus (*e.g.*, the Grin Scope); and where infringing products have been manufactured, among other topics.

Grin's response to this straightforward request is deficient. Grin's narrative response is roughly a page long and contains no specific discussion regarding research, design, or testing of the Grin app, the AI Scan Guide, or the AI Scan Summary—all of which are accused products. Instead, the response offers non-specific statements like ████████████████████████████████████████████████████████, and ██████████████████████████████████████████████████ Ex. 4 at 25. The response fails to provide basic, relevant information, including an explanation of what specific research, design, and testing activities Grin carried out, where and when these activities occurred, and who was involved. *See id.*

1

Grin invoked Rule 33(d) in response to No. 10. Ex. 4 at 26. The rule applies when an answer may be determined by examining records and "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). Here, the burden is substantially lower for Grin—rather than DM—to review Grin's materials and describe the development and testing of the accused products. In addition, the limited documentation Grin has identified to date is fragmentary, lacks consistent information regarding dates and authors, and is incomplete regarding development and testing. Thus, Rule 33(d) does not justify Grin's minimal response, and Grin should be ordered to supplement its response with complete information as to research, design, manufacture, and testing—specific to each of the accused products.

**Interrogatory No. 16**—as narrowed by DM—requests the following: "Describe with specificity Your relationship with each entity You have transacted with or contracted with since 2018 to develop, test, train, maintain, or operate any artificial intelligence, machine learning, deep learning, and/or neural network functionality of the Accused Products, including but not limited to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In Your response, specify the services that each entity performed (or performs) for Grin, the geographical locations where such services are (or were) performed, the date(s) such services are (or were) performed, and the identity of the person at Grin who is most knowledgeable regarding the entity's relationship with Grin." Ex. 4 at 33-34 (Grin's 10/11/23 response); Ex. 5 at 7-8 (11/22/23 DM letter narrowing No. 16).

The information sought by No. 16 is highly relevant because Grin has put at issue ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. For example, Grin has argued that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 4 at 10, and Grin has produced and relied on an email from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 6. Grin has also contended that it does not infringe because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and it has produced documentation indicating ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 4 at 11; Ex. 7.

Grin's response to No. 16 provides no information whatsoever, and instead requests a meet-and-confer. Ex. 4 at 34. DM conferred with Grin for roughly 2.5 hours in November and narrowed the scope of No. 16 in response to Grin's objections, Ex. 5 at 7-8, but Grin still refused to provide any substantive response to the narrowed interrogatory. Ex. 8 (12/1/23 Letter from Grin). Grin's stonewalling is improper and unfair: Grin has disclosed limited, self-serving information regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to create its non-infringement contentions, while refusing to provide a complete account of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

### III.  Interrogatory Nos. 2 and 15 Seek Information Related to Design and Operation

**Interrogatory No. 2** asks Grin to "identify any software module … that is part of the Accused Products and/or Grin Service that implements artificial intelligence, machine learning, deep learning, and/or neural network-based algorithms," and to provide certain information regarding the identified software, such as when it was implemented and where it is executed. Ex. 4 at 6.

Grin's response is deficient in multiple respects. First, the narrative portion is limited to a single conclusory statement that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 7. But Grin

Case 1:22-cv-00647-WCB   Document 92   Filed 12/15/23   Page 4 of 5 PageID #: 1172

has already admitted through its press release that "[t]he AI Scan Summary *uses deep-learning*," Ex. 3 at 1. Moreover, the interrogatory is not limited to deep learning: it also seeks discovery regarding AI and machine learning ("ML"). Ex. 4 at 6. AI and ML functionality in the accused products is relevant because AI and ML encompass deep learning, and because Grin has alternatively described its "deep-learning" AI Scan Summary product as utilizing "an ML-Ops platform." Ex. 10 at 3; *see also* Ex. 3 at 1 (stating that the "AI Scan Guide" uses "machine learning (ML) algorithms"). Thus, Grin's conclusory statement that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ does not respond to the full scope of the interrogatory. Second, the interrogatory response incorporates by reference a letter from Grin's counsel, but the letter consists of conclusory denials and is improperly limited in scope because it does not address the AI Scan Summary. Ex. 4 at 7; Ex. 9 (letter). Third, Grin invokes Rule 33(d) by referring generally to "documentation … on the source code computer" and identifying roughly 50 produced documents, but here again, Grin's reliance on Rule 33(d) is improper. Ex. 4 at 7. The interrogatory seeks an identification of relevant software modules, and the burden of identification is less for Grin than it is for DM considering Grin's extensive knowledge of its own source code. *See Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, C.A. No. 07-351-JJF, 2010 WL 2898288, at *2 (D. Del. July 20, 2010) (overruling objection based on Rule 33(d) and ordering accused infringer to answer an interrogatory requesting identification of software components because the accused infringer had "extensive knowledge of its own source code means"). Furthermore, the interrogatory seeks information regarding when the identified software modules were first implemented and their geographic location when executed during normal operation, among other pieces of information. The requested information is not disclosed by the 50 documents listed.

Grin has claimed that No. 2 improperly shifts the burden of proving infringement to Grin. But this is not what this interrogatory requests—the interrogatory seeks identification of relevant software modules with functionality that Grin has publicly boasted about using. Ex. 3 at 1.

**Interrogatory No. 15** asks Grin to describe "the complete factual basis for [Grin's] statement that '[t]he AI Scan Summary *uses deep-learning* to automatically select the best intraoral visuals from patients …,' including describing the automatic intraoral visual selection functionality, describing the machine learning, deep learning, or other artificial intelligence algorithms used to implement the aforementioned functionality," and identifying software modules and documentation. Ex. 4 at 32 (referencing Ex. 3 at 1) (emphasis added). The information is highly relevant because DM asserts patent claims that specifically recite **use of a "deep learning device**." Exs. 1-2.

Grin's response is deficient for two reasons. First, the substantive portion of the response ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and thus fails to articulate the complete basis for Grin's statement regarding its use of deep learning. Ex. 4 at 33. Second, the response provides an incomplete description of the "machine learning, deep learning, or other artificial intelligence algorithms used to implement the aforementioned functionality" because, for example, it does not describe how ▮▮▮▮▮▮▮▮▮▮ is accomplished ▮▮▮▮▮▮; it does not describe how ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ occurs ▮▮▮▮▮▮; and it does not describe how ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ occurs ▮▮▮▮▮▮. *Id.*



For these reasons, DM respectfully requests that the Court order Grin to supplement its responses to Interrogatory Nos. 2, 10, 15, and 16.

3

        Respectfully,

        */s/ Megan E. Dellinger*

        Megan E. Dellinger

MED/rah
Attachment

cc:    All counsel of record via electronic mail