IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DENTAL MONITORING, | ) | |
| | ) | C.A. No. 22-647 (WCB) |
| Plaintiff, | ) | CONSOLIDATED |
| | ) | |
| v. | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| GET-GRIN INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION FOR LEAVE TO AMEND**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
OF COUNSEL:                                         1201 North Market Street
                                                   P.O. Box 1347
George F. Pappas                                   Wilmington, DE  19899-1347
Einar Stole                                        (302) 658-9200
Laura Marie Martin                                 jblumenfeld@morrisnichols.com
Jia Hui Jiang                                      mdellinger@morrisnichols.com
William Meyer*
COVINGTON & BURLING LLP
One CityCenter                                     *Attorneys for Plaintiff*
850 Tenth Street, NW
Washington, DC  20001-4956
(202) 662-6000

Michael E. Bowlus                                  Sinan Utku
COVINGTON & BURLING LLP                            COVINGTON & BURLING LLP
Salesforce Tower                                   22 Bishopsgate
415 Mission Street, Suite 5400                     London, EC2N-4BQ
San Francisco, CA  94105-2544                      +44 20 7067 2000
(415) 591-6000


*Member of the Bar of New York, District of
Columbia Bar membership pending; supervised
by principals of the Firm.*

Originally Filed:  February 28, 2024
Redacted Version Filed:  March 6, 2024

## TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF ARGUMENT ................................................................................. 1

III.   STATEMENT OF FACTS ...................................................................................... 2

       A.    DM Announced the Launch of the ScanBox Pro in 2021, and Published
             Videos of the Product and Its Instruction Guide.......................................... 2

       B.    Grin's Design Patent Issued in June 2023, and Grin Subsequently Filed Its
             Answer Without Asserting Any Counterclaims. ...................................... 4

       C.    Grin's Request to Delay Trial Was Denied. ......................................... 5

       D.    Grin Waited Until the Last Day to Seek Leave to Amend. ................. 5

IV.    LEGAL STANDARD.......................................................................................... 6

V.     ARGUMENT ...................................................................................................... 6

       A.    Grin's Delay Is Unjustified.................................................................. 6

             1.    Affirmative Defenses ................................................................ 7

             2.    Counterclaims ........................................................................... 8

       B.    DM Would Be Prejudiced by This Late Expansion of the Case............................ 8

       C.    Grin's Proposed Counterclaims Are Futile........................................... 10

             1.    Design Patent Infringement (Count I)...................................... 10

             2.    Grin Does Not Plead Trade Dress Infringement Under the Lanham
                   Act (Count II)......................................................................... 17

             3.    Grin Does Not Plead a Violation of the DTPA (Count III) ..................... 20

       D.    Grin Did Not Comply with the Meet-and-Confer Requirement as to
             Proposed Counterclaim Count III. .......................................................... 20

VI.    CONCLUSION...................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 142 (2015)................................13

*Bath Auth., LLC v. Anzzi LLC*,
2018 WL 5112889 (E.D. Pa. Oct. 19, 2018).........................................................................20

*Butamax™ Advanced Biofuels LLC v. Gevo, Inc.*,
C.A. No. 11-54-SLR, 2012 WL 2365905 (D. Del. June 21, 2012) .........................................7

*Buyer's Direct Inc. v. Dick's Sporting Goods, Inc.*,
2019 WL 5491548 (E.D.N.C. Oct. 24, 2019) ......................................................................15

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
80 F.4th 1363 (Fed. Cir. 2023) ....................................................................................11, 12

*Conopco, Inc. v. WBM, LLC*,
No. 21-14205, 2023 WL 2570207 (D.N.J. Mar. 20, 2023) ...................................................17

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
252 F.3d 267 (3d Cir.2001)...............................................................................................7

*Curver Luxembourg, SARL v. Home Expressions Inc.*,
938 F.3d 1334 (Fed. Cir. 2019)........................................................................................11

*Curver Luxembourg, SARL v. Home Expressions Inc.*,
No. 17-cv-4079, 2018 WL 340036 (D.N.J. Jan. 8, 2018), *aff'd*, 938 F.3d 1334
(Fed. Cir. 2019)........................................................................................................10, 11

*Delaware Display Grp. LLC v. Lenovo Grp. Ltd.*,
No. CV 13-2108-RGA, 2016 WL 720977 (D. Del. Feb. 23, 2016) ....................................6, 7

*Design With Friends, Inc. v. Target Corp.*,
2022 WL 4448197 (D. Del. Sept. 23, 2022)........................................................................19

*Digital Dream Labs, LLC. v. Living Tech. (Shenzhen) Co.*,
587 F. Supp. 3d 305 (W.D. Pa. 2022).............................................................................17, 18

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc).............................................................................13

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015)...............................................................................13, 14, 16

*Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*,
    986 F.3d 250 (3d Cir. 2021) ........................................................................................18, 19

*Fabricatore v. ADT LLC*,
    No. CV 16-916-FLW, 2018 WL 3696581 (D.N.J. Aug. 3, 2018) ...........................................6

*Fair Wind Sailing, Inc. v. Dempster*,
    764 F.3d 303 (3d Cir. 2014) ....................................................................................17, 18, 19

*Foman v. Davis*,
    371 U.S. 178 (1962) ..............................................................................................................6

*Inline Connection Corp. v. AOL Time Warner Inc.*,
    237 F.R.D. 361 (D. Del. 2006) .........................................................................................6, 9

*Intell. Ventures I LLC v. Toshiba Corp.*,
    C.A. No. 13-453-SLR-SRF, 2015 WL 4916789 (D. Del. Aug. 17, 2015) .............................7

*Keurig, Inc. v. Sturm Foods, Inc*.,
    2012 WL 4049799 (D. Del. Sept. 13, 2012) .......................................................................20

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993) ...................................................................................................19

*Massarsky v. General Motors Corp.*,
    706 F.2d 111 (3d Cir. 1983) ...............................................................................................10

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
    747 F.3d 1326 (Fed. Cir. 2014) ..........................................................................................14

*MSA Prods., Inc. v. Nifty Home Prods., Inc.*,
    883 F. Supp. 2d 535 (D.N.J. 2012) .....................................................................................11

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) .................................................................................................6

*Performance Designed Prods. LLC v. Mad Catz, Inc.*,
    2016 WL 3552063 (S.D. Cal. June 29, 2016) .....................................................................15

*PIM Brands Inc. v. Haribo of Am. Inc.*,
    No. 22-2821, 2023 WL 5763347 (3d Cir. Sept. 7, 2023) .....................................................19

*SCG Characters LLC v. Telebrands Corp.*,
    No. 15-374, 2015 WL 4624200 (C.D. Cal. Aug. 3, 2015) ...................................................16

*Shire U.S., Inc. v. Barr Labs., Inc.*,
    329 F.3d 348 (3d Cir. 2003) ....................................................................................17, 18, 19

*State Farm Fire & Cas. Co. v. Hines*,
No. 21-2354, 2022 WL 7973331 (3d Cir. Oct. 14, 2022).......................................................17

*Tanikumi v. Walt Disney Co.*,
616 F. App'x 515 (3d Cir. 2015) ..........................................................................................13

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
532 U.S. 23 (2001)..........................................................................................................18, 19

*USX Corp. v. Barnhart*,
395 F.3d 161 (3d Cir. 2004)....................................................................................................6

*Wepay Global Payments LLC v. PNC Bank N.A.*,
No. 22-cv-592, 2022 WL 1782504 (W.D. Pa. June 1, 2022) ....................................10, 13, 14

*Wine Enthusiast, Inc. v. Vinotemp Int'l*,
317 F. Supp. 3d 795 (S.D.N.Y. 2018).....................................................................................15

## TABLE OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 1 | October 4, 2021 Business Wire Press Release for ScanBox Pro |
| 2 | Screenshot of ScanBox Pro Youtube Tutorial |
| 3 | ScanBox Pro Instructions for Use |
| 4 | Wayback Machine showing ScanBox Pro Instructions for Use available online on April 17, 2023 |
| 5 | Issue Notification for Grin's Design Patent '514 |
| 6 | Get-Grin Inc's 2nd Set of Requests for Production, served on October 23, 2023 |
| 7 | Email Correspondence Between Dental Monitoring and Grin Discussing Grin's Motion for Leave to Amend |
| 8 | Grin's Draft Amended Answer, provided to Dental Monitoring on February 8, 2024 |
| 9 | Email _____ on November 25, 2021 (GRIN-DE00297316) |
| 10 | Email _____ on October 5, 2021 (GRIN-DE00208912) |
| 11 | U.S. Patent Publication No. 2019/0167115, filed on August 9, 2017 |
| 12 | PCT Publication No. WO2021/058930, filed on Sept. 25, 2020 |
| 13 | U.S. Design Patent No. D973,887, filed on February 13, 2020 |

## I.      NATURE AND STAGE OF THE PROCEEDINGS

This patent infringement case has been pending since May 2022. Now that the parties are a mere six weeks from the close of fact discovery, in the final hour of the final day before the Scheduling Order's deadline to amend pleadings, Get-Grin Inc. ("Grin") seeks to amend its answer and add three new counterclaims that would drastically expand the issues to be litigated.

## II.     SUMMARY OF ARGUMENT

Grin's motion for leave to amend should be denied on multiple bases.

First, Grin unduly delayed in seeking leave to amend. It waited until the final hour of the final day to seek leave to amend its answer and add counterclaims. Grin's last-minute proposal is unjustified, avoidable and could have been pled in June 2023.

Second, Dental Monitoring ("DM") would be prejudiced if Grin's amendments are allowed. Grin's proposed amendments, including three new counterclaims, would drastically expand the issues to be litigated and significantly delay the May 2025 trial date. DM should not be prejudiced with a delayed trial date because of Grin's lack of diligence.

Third, Grin's proposed counterclaims are futile. Grin's counterclaim for infringement of a design patent (Count I) is fatally deficient for two reasons. First, the design patent is directed to "a dental scope," but Grin accuses only a component of the ScanBox Pro—the cheek retractor—of infringement. The retractor is not "a dental scope" and does not infringe the claimed dental scope. Second, no reasonable factfinder could find infringement in light of the fundamental differences between the claimed design and the accused retractor.

Grin's proposed Lanham Act trade dress infringement counterclaim (Count II) is likewise fatally deficient for two reasons. First, Grin does not articulate the specific features of its putative trade dress and relies instead on vague, open-ended characterizations that are inadequate as a matter of law. Second, Grin does not plausibly allege facts establishing that its product design is

1

non-functional. Grin's proposed counterclaim under the Delaware Deceptive Trade Practice Act (Count III) is futile for the same reasons. A DTPA claim, like a claim under the Lanham Act, requires proof that the asserted trade dress is valid and legally protectable.

Finally, leave to amend as to Count III should be denied for the additional reason that Grin did not meet and confer as required by Local Rule 7.1.1. In advance of meeting and conferring with DM, Grin circulated a draft amended answer that completely omitted Count III. Grin also neglected to address Count III during the meet and confer.

## III.  STATEMENT OF FACTS

### A.  DM Announced the Launch of the ScanBox Pro in 2021, and Published Videos of the Product and Its Instruction Guide.

In a Business Wire press release dated October 4, 2021, DM announced the launch of its ScanBox Pro, an innovative device that allows patients to use their smartphones to capture excellent imagery of their teeth, including occlusal and lateral views. Ex. 1. Imagery acquired with the use of the ScanBox Pro and a patient's smartphone facilitates precise tracking of the patient's treatment progress with aligners, braces, or retainers. *Id.*

As stated in the press release, the ScanBox Pro comprises two components: a smartphone holder and a cheek retractor. *Id.* at 2. The holder holds the patient's device when the patient is performing a scan of his or her teeth. The holder attaches to the cheek retractor, which is a tube with openings. One opening fits into the patient's mouth and draws cheeks and lips away from the patient's teeth, allowing for better visibility. The other end of the tube is open to the patient's smartphone camera, held in place by the holder. In this way, both components of the ScanBox Pro work together to capture imagery of the patient's teeth using a smartphone.

The appearance of the ScanBox Pro, and the presence and shape of the cheek retractor component, are clearly disclosed in the Business Wire press release. For example, the press release includes a video showing a close-up of the product on a pedestal, as shown below.[1]



Other similar disclosures of the ScanBox Pro and its components are publicly available online. For example, DM posted on its YouTube channel a video titled "ScanBox Pro tutorials for patients with braces – English." Ex. 2. The YouTube page states that the video is from "2 years ago," *i.e.*, 2022. *Id.* The video depicts a user attaching the retractor to the phone holder:



---

[1] This image appears at 0:30 in the video shown in the Business Wire press release attached as Ex. 1.

As a further example, DM made the Instructions for Use available online. Ex. 3. The instructions clearly depict the retractor component from multiple angles:



*Id.* at 8. The instructions were online as of April 17, 2023. Ex. 4 (Wayback Machine).

**B.     Grin's Design Patent Issued in June 2023, and Grin Subsequently Filed Its Answer Without Asserting Any Counterclaims.**

On April 20, 2023, DM filed a patent infringement complaint against Grin. *See* C.A. No. 23-432, D.I. 1.[2] Grin requested, and DM agreed to, a month-long extension of Grin's response deadline, through and including June 12, 2023. *Id.*, D.I. 9.

Meanwhile, on May 17, 2023, the USPTO notified Grin that its design patent would issue on June 6, 2023. Ex. 5 (Issue Notification). The patent issued on that date. D.I. 126-4 ("Date of Patent: Jun. 6, 2023"). Thus, when Grin filed its answer on June 12, Grin's design patent had issued and the ScanBox Pro was publicly disclosed online. Grin, however, did not allege any counterclaims for design patent infringement or trade dress infringement. C.A. No. 23-432, D.I. 13. Grin also did not seek production of any DM products until October 23, 2023. Ex. 6 (Grin's Second Set of RFPs) at 5.

---

[2] DM's action filed on April 20, 2023 was subsequently consolidated with the present action. D.I. 53.

**C.      Grin's Request to Delay Trial Was Denied.**

On August 10, 2023, the parties submitted proposed schedules. D.I. 54. Grin requested a five-month delay of the trial date, from May 19, 2025, to October 2025. *Id.* at 4. Again, Grin did not mention any counterclaims. The Court rejected Grin's request and entered a schedule that maintained the May 19, 2025 trial date. D.I. 56 at 4.

**D.      Grin Waited Until the Last Day to Seek Leave to Amend.**

Grin filed the instant motion for leave to amend on February 14, 2024, the last day for doing so. D.I. 102, 126. The deadline for production of documents has passed and less than six weeks remain of fact discovery.[3] Nonetheless, Grin's proposed amendment seeks to add three new counterclaims: Count I, alleging infringement of Grin's design patent, which issued over eight months ago, on June 6, 2023; Count II, alleging trade dress infringement based on the ScanBox Pro, which DM publicly disclosed in 2021; and Count III, alleging violation of the Delaware Deceptive Trade Practices Act relating to the ScanBox Pro. D.I. 126-5 (blackline of proposed amended answer and counterclaims) at 82-85. Grin also proposes to add an affirmative defense of "Unclean Hands and Patent Misuse," *id.* at 72, as well as allegations regarding purported accessing of Grin's website years ago, in 2021, *id.* at 77-80.

Grin did not disclose its proposed DTPA counterclaim (Count III) prior to filing its motion on February 14. Grin provided DM with a draft of its amended answer on February 8, Ex. 7 (email) at 2, Ex. 8 (attachment). That draft included proposed counterclaims for design patent infringement and trade dress infringement, Ex. 8 at 82-85, but no proposed DTPA counterclaim. The parties

---

[3] The deadline for fact discovery is March 29, 2024. D.I. 102. DM anticipates that the parties will agree to schedule certain depositions during the week of April 1, 2024, to accommodate witness availability.

conferred regarding Grin's motion on February 12, but Grin did not mention any DTPA counterclaim. Thus, no meet and confer was held regarding the DTPA counterclaim.

## IV.    LEGAL STANDARD

Leave to amend a pleading is governed by Rule 15(a)(2), which provides that "a party may amend its pleading [] with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). A district court "may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

## V.    ARGUMENT

### A.    Grin's Delay Is Unjustified.

Grin has been on notice of the facts relevant to its allegations for years, and Grin's own production confirms ███████████████████████████████████████ Grin waited over eight months – without explanation – until the last day to amend its pleading. "It is not for a party to unilaterally determine that it may delay moving to amend its pleadings when it has access to the information necessary for such amendment." *Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 368 (D. Del. 2006). Grin's undue delay is an adequate basis to deny leave to amend under Rule 15(a). *Id.* at 369. Courts "focus on the movant's reasons for not amending sooner" in determining whether there is undue delay. *See USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004) (affirming denial of leave to amend where the movant had notice of the relevant facts prior to filing its original complaint) (internal quotations omitted).

Grin argues its motion must be granted because it filed its proposed amendment by the scheduling order deadline. But courts in this circuit have rejected such a "mechanistic" approach to Rule 15. *See Delaware Display Grp. LLC v. Lenovo Grp. Ltd.,* C.A. No. 13-2108-RGA, 2016 WL 720977, at *8 (D. Del. Feb. 23, 2016); *Fabricatore v. ADT LLC*, No. CV 16-916-FLW, 2018

WL 3696581, at *8 (D.N.J. Aug. 3, 2018) ("[T]he Court, nevertheless, holds that a motion may be denied on the basis of undue delay even when that motion is filed timely within a court-ordered deadline."). In *Delaware Display Group*, the movants waited to move to amend their pleadings until the final day permitted by the court's schedule, with no explanation for their delay. *Delaware Display*, 2016 WL 720977, at *1, 8. Noting that the movants' "only 'reason for not amending sooner' appear[ed] to be that the scheduling order's deadline had not yet elapsed," and that the movants had waited until "the last possible day" to file, the court denied leave to amend. *Id.*, at * 9 (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). This Court should follow suit.

Grin's cases are unavailing. In *Butamax*, the court granted leave to amend over objections that the amendment would prejudice the non-movant by delaying the litigation, with the court discounting that objection because it did "not intend to allow any such delay[.]" *Butamax™ Advanced Biofuels LLC v. Gevo, Inc.*, C.A. No. 11-54-SLR, 2012 WL 2365905, at *2 (D. Del. June 21, 2012). But here the sheer scope of the proposed amendment is such that a significant delay would be unavoidable. In *Intellectual Ventures*, the magistrate judge emphasized that the non-movants did not claim they would be prejudiced by the proposed amendment. *Intell. Ventures I LLC v. Toshiba Corp.*, C.A. No. 13-453-SLR-SRF, 2015 WL 4916789, at *2 (D. Del. Aug. 17, 2015). Here, by contrast, DM would be prejudiced, as discussed below.

### 1. Affirmative Defenses

Grin bases its newly proposed affirmative defenses of unclean hands and patent misuse on allegations surrounding website access by DM. Grin's Opening Brief ("Br.") at 5. Grin alleges that DM accessed Grin's online platform through a dentist login (*see* Proposed Amended Answer ¶¶ 18-27), but Grin does not allege that it was only recently put on notice of such alleged website access. In fact, email correspondence produced by Grin

. *See* Ex. 9 (11/25/21 email produced by Grin in which                              ”).

### 2.      Counterclaims

Similarly, Grin provides no justification for delaying its new counterclaims. All three of Grin's counterclaims rest on facts pertaining to the design of the ScanBox Pro. But information regarding design of the ScanBox Pro, including its components and images from multiple angles, has been publicly available online for years. Indeed, Grin was aware of the ScanBox Pro                              . See Ex. 10 (10/5/21 email                              ). In November 2021, just one month after the launch of the ScanBox Pro,                              . *See* Ex. 9. Even so, Grin did not allege counterclaims of design patent infringement or trade dress infringement when it filed its answer in June 2023.

Grin cannot defend its delay by pointing to the January 2024 production of the ScanBox Pro by DM. Grin did not request samples of Dental Monitoring products until October 23, 2023, when discovery had already reached an advanced stage. *See* Ex. 6 at 5. Grin had access to images and videos of the ScanBox Pro and its constituent parts online, and none of the images in Grin's proposed counterclaims provide any information not already publicly available for years. DM should not be penalized for Grin's unjustified delay.

### B.      DM Would Be Prejudiced by This Late Expansion of the Case

Grin's new defenses and counterclaims, if permitted, would significantly delay the resolution of the litigation and allow Grin to continue infringing DM's patents. "A party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add cost in the

preparation to defend against new facts or theories." *See Inline*, 237 F.R.D. at 370. The deadline for document production has passed, and fact discovery is set to close on March 29. D.I. 102. The Court already set a trial date for May 2025 – over the objections of Grin, which had sought to delay trial until October of 2025. *See* D.I. 54 & 56. The May 2025 trial date is predicated on the timely completion of discovery. If Grin's motion is granted, Grin will receive and benefit from the lengthy delay of trial that this Court already denied. *See Inline*, 237 F.R.D. at 370 (denying leave to amend under Rule 15 where trial was already scheduled for the following year, and the non-movant would be "unduly prejudiced by having to defend against [] new theories were they introduced at this stage of an already lengthy litigation").

Grin asserts in conclusory fashion that "there is sufficient time for discovery regarding the added claims" (Br. at 4), but Grin ignores that it is seeking to add three counterclaims and two affirmative defenses to this litigation. These amendments, if allowed, would require significant additional discovery. For example, Count I alleges infringement of a design patent that is not part of this case. If Grin is permitted to add Count I, then DM would need to propound interrogatories and request documents relating to the invalidity of the claimed design, and Grin's application for, and prosecution of, the claimed design. DM would also need to conduct a search for invalidating prior art, and the parties would need to engage in fact and expert discovery regarding any alleged value of the claimed design and any supposed damages incurred by Grin.

Similarly, counts II and III—alleging trade dress infringement and violation of DTPA— would introduce new issues requiring additional discovery. For example, DM would need to seek discovery regarding what, precisely, Grin contends is its trade dress and what supposed "actual confusion" has been caused by the ScanBox Pro. This could include discovery to identify, and then depose, purportedly confused individuals. In addition, DM would need to seek discovery regarding

Grin's allegations that it has been irreparably harmed by trade dress infringement and damaged by supposedly unfair trade practices. *See* D.I. 126-5 at 84-85.

Grin has not agreed that it will not seek an extension of the case schedule. DM asked Grin whether it intends to seek an extension of the case schedule should the amendment be allowed. *See* Ex. 7 at 1. Grin replied only that it is "***not currently seeking an extension*** of the case schedule should the amendment be allowed, but we are open to discussing an extension with Dental Monitoring." *Id.* (emphasis added). If the case proceeds on the current schedule with Grin's new defenses and counterclaims added, DM would be denied a full and fair opportunity to take the discovery necessary to defend against Grin's new claims. But if the case schedule is delayed, then DM would be prejudiced from the loss of the trial date that has been in place for years, permitting Grin to continue to infringe DM's patents and harm DM's business. Either way, DM will suffer prejudice if Grin's additional defenses and counterclaims are added to this case at this late stage.

### C.     Grin's Proposed Counterclaims Are Futile.

#### 1.     Design Patent Infringement (Count I)

Grin's claim for design patent infringement is futile because the proposed counterclaim does not state a plausible claim for infringement of the '514 patent. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) ("The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss."). "While infringement is a question of fact, courts may dismiss claims of design infringement on a Rule 12(b)(6) motion where, as a matter of law, no reasonable factfinder could find infringement." *Wepay Global Payments LLC v. PNC Bank N.A.*, No. 22-cv-592, 2022 WL 1782504, at *2 (W.D. Pa. June 1, 2022) (quoting *Curver Luxembourg, SARL v. Home Expressions Inc.*, No. 17-cv-4079, 2018 WL 340036, at *4 (D.N.J. Jan. 8, 2018), *aff'd*, 938 F.3d 1334 (Fed. Cir. 2019)). Indeed, "many courts have dismissed claims of design infringement on Rule 12(b)(6) motions where, as a matter of law,

the court finds that no reasonable fact-finder could find infringement." *MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 883 F. Supp. 2d 535, 540 (D.N.J. 2012) (citing cases). *See, e.g.*, *Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1339, 1343 (Fed. Cir. 2019) (affirming dismissal of design patent claim under Rule 12(b)(6)).

Here, Grin's proposed counterclaim does not set forth a plausible infringement claim for at least two reasons. *First*, the '514 patent claims a design for "a dental scope." Grin accuses DM's ScanBox Pro of infringing the '514 patent but relies not on the ScanBox Pro as a whole (which does not remotely resemble the claimed dental scope) but on one component, the cheek retractor. The claimed design, however, does not cover a cheek retractor. *Second*, even if Grin could allege infringement based on the cheek retractor, Grin's claim would still fail because no reasonable factfinder could find infringement in light of the fundamental differences between the claimed design and the accused retractor.

### a) Grin fails to allege infringement by a dental scope.

"[A] design-patent claim's scope is limited to the article of manufacture identified in the claim." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1377 (Fed. Cir. 2023). The Federal Circuit has made clear that "for an accused design to infringe, it must be applied to the article of manufacture identified in the claim." *Id.* at 1378 (citing *Curver*, 938 F.3d at 1336, 1340, 1343). In *Curver*, for example, the Federal Circuit affirmed the dismissal of a complaint that alleged that a basket infringed a design patent whose claim was limited to a chair. *See* 938 F.3d at 1336, 1343.

The '514 patent claims the "ornamental design for a dental scope, as shown and described." D.I. 126-4. The patent describes each of the figures as depicting a "dental scope," *id.*, Description, which is shown as a one-piece scope, *see, e.g.*, *id.*, Fig. 1. The proposed counterclaim alleges that DM infringes by "using, making, [and] selling … the ScanBox Pro." D.I. 126.3 ¶ 53, but unlike

the '514 patent, the ScanBox Pro consists of two components: a phone support and a cheek retractor. Grin makes no effort to compare the ScanBox Pro, including the retractor and support, to the claimed dental scope. Nor could it. The image of the ScanBox Pro in the counterclaims, D.I. 126-3 at 80 (reproduced below), makes clear that its design looks nothing like the single-piece design of the '514 patent:

| Figure 1 of '514 Patent | ScanBox Pro (annotated) |
|---|---|
|  | |

Instead, the infringement claim is based solely on the *retractor*. *Id.* at 82. But this claim fails as a matter of law because Grin does not accuse "the article of manufacture identified in the claim," *Columbia Sportswear*, 80 F.4th at 1378—*i.e.*, "a dental scope." Grin does not allege that the retractor used in the ScanBox Pro is a dental scope. Nor does Grin allege that the retractor is marketed or sold by itself, or can be used apart from the phone support to which it is attached. Because the proposed counterclaim does not allege infringement by a dental scope, it fails to state a plausible infringement claim for this reason alone.

### b)  No reasonable factfinder could conclude that the cheek retractor infringes the '514 patent.

Even if Grin could assert the patent against only the cheek retractor, Grin's infringement claim still fails as a matter of law. A comparison of the '514 patent to the retractor makes clear

that, "as a matter of law, no reasonable factfinder could find infringement." *Wepay*, 2022 WL
1782504, at *2 (dismissing design patent infringement claim under Rule 12(b)(6)).

"A design patent is infringed '[i]f, in the eye of an ordinary observer, giving such attention
as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as
to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Ethicon
Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (quoting *Egyptian
Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc)). The ordinary observer
test consists of two steps. The first step assesses whether "the claimed and accused designs are
'sufficiently distinct' and 'plainly dissimilar.'" *Id.* (quoting *Egyptian Goddess*, 543 F.3d at 678).
If they are, "the patentee fails to meet its burden of proving infringement as a matter of law." *Id.*
If they are not plainly dissimilar, the inquiry proceeds to a second step: "comparing the claimed
and accused designs with prior art to identify differences that are not noticeable in the abstract but
would be significant to the hypothetical ordinary observer familiar with the prior art." *Id.*

Here, a comparison of the DM cheek retractor to the figures of the '514 patent reveals
strikingly different designs.[4] The claimed design of the '514 patent depicts a single tubular body
with openings on both ends. As shown in Fig. 2 (below), the tube has a distinctive taper on two of
the four sides, with the top of the tube (the end placed in a user's mouth) being wider than the
bottom (the end to which the phone is attached). As a result, the openings have different shapes

---

[4] The images in the comparison set out in the proposed counterclaims do not accurately represent
the accused retractor in several important respects. DM has thus provided additional images in this
opposition. The Court may rely on these images as they are integral to the infringement claim and
their authenticity cannot reasonably be questioned. *See, e.g., Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927, 932 (Fed. Cir. 2014) (finding "no error in the court's consideration of the
photographs of the accused … products" on a motion for judgment on the pleadings), *cert. denied*,
136 S. Ct. 142 (2015); *Tanikumi v. Walt Disney Co.*, 616 F. App'x 515, 518 (3d Cir. 2015) (finding
it appropriate to examine the disputed works at issue in a copyright dispute on a Rule 12(b)(6)
motion where those works were integral to the complaint).

and sizes. The larger opening for the mouth (shown in Fig. 6) has a football shape that comes to a point at the left and right sides of the opening, while the smaller opening for the phone has a distinctive square shape (shown in Fig. 7). So in the patent, the scope gradually transitions from a larger rectangular shape at the mouth end to a smaller square shape at the phone end.

By contrast, and as shown below, the accused retractor has an elongated rectangular shape from the mouth end to the phone end, and the openings on both ends have the same or nearly the same shapes and sizes. The accused retractor thus lacks the distinctive taper of the '514 patent and instead is substantially the same width from the mouth end to the phone end. Importantly, the opening for the phone is an elongated rectangle that is plainly different from the square opening in the patent.[5] Further, the mouth opening is a rectangle with rounded edges on the left and right sides, similar to the shape of a running track but unlike the football-shaped opening of the patent. The Federal Circuit has "often noted that design patents have 'almost no scope' beyond the precise images shown in the drawings." *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1333 n.1 (Fed. Cir. 2014).[6] Courts have often granted motions to dismiss based on similar differences between the shape of a patented design and the shape of the accused product.[7] *See, e.g.*, *Wepay*, 2022 WL 1782504, at *3 (granting motion to dismiss design patent claim where there were "notable differences in shape size and spacing such that no ordinary observer would mistake the

---

[5] Indeed, Grin does not even include a comparison of Fig. 7 in the patent—showing the square-shaped phone end—to the phone end of the accused retractor.

[6] The scope of a design patent is limited to the ornamental, *i.e.*, non-functional, qualities of the design. *See Ethicon*, 796 F.3d at 1328. For purposes of this opposition, DM assumes (but does not admit) that the entirety of the claimed design is ornamental.

[7] While these differences alone are sufficient to conclude that the accused retractor is plainly dissimilar to the patent, there are additional differences between the accused retractor and the claimed design.

14

Accused Design with the Asserted Design or vice versa").[8]



| The '514 Patent | DM Retractor |
|---|---|
| Fig. 2 | |
| Fig. 6 | |
| Fig. 7 | |

Although the comparisons above establish that the accused retractor is plainly dissimilar

to the claimed design, the differences stand out even more in view of the prior art. As shown below,

---

[8] *See also Buyer's Direct Inc. v. Dick's Sporting Goods, Inc.*, 2019 WL 5491548, at *2 (E.D.N.C. Oct. 24, 2019) (granting motion for judgment on the pleadings where "the shape of the foot openings [in foot coverings] are different"); *Wine Enthusiast, Inc. v. Vinotemp Int'l*, 317 F. Supp. 3d 795, 801 (S.D.N.Y. 2018) (granting motion to dismiss where accused product, unlike claimed design, "has no 'J' shape; it has no curves at all"); *Performance Designed Prods. LLC v. Mad Catz, Inc.*, 2016 WL 3552063, at *4 (S.D. Cal. June 29, 2016) ("a notable difference between the two designs is that the [patented design] is curved and rounded without angles while the Accused Controller is straight and squared with many angles giving it a boxy look").

prior art cited on the face of the '514 patent disclose dental scopes having differently shaped bodies (both with and without tapers) and differently shaped openings. Like the accused retractor, each design has a more rectangular shape throughout the length of the body compared to the square shape at the phone end of the '514 patent, and none appears to have a square shaped opening at the phone end. These prior art designs make clear that the differently shaped body and openings in the accused retractor, as compared to the '514 patent, would be "significant to the hypothetical ordinary observer familiar with the prior art." *Ethicon*, 796 F.3d at 1335; *see also SCG Characters LLC v. Telebrands Corp.*, No. 15-374, 2015 WL 4624200, at \*6 (C.D. Cal. Aug. 3, 2015) (granting motion to dismiss where "the [accused] products appear to the [c]ourt to be more similar to the prior art than to [the plaintiff's] asserted designs").

| Exemplary Prior Art |
|---|



PCT Publication No. WO2021/058930, filed on Sept. 25, 2020 (Ex. 12), Fig. 5

U.S. Patent Publication No. 2019/0167115, filed on August 9, 2017 (Ex. 11), Fig. 2

U.S. Design Patent No. D973,887, filed on February 13, 2020 (Ex. 13), Fig. 1

### 2.      Grin Does Not Plead Trade Dress Infringement Under the Lanham Act (Count II)

Trade dress protects "incidental, arbitrary or ornamental product features which identify the product's source." *Shire U.S., Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003). To establish trade dress infringement, a claimant must, among other things, "articulat[e] the specific elements which comprise its distinct dress" and show that "the allegedly infringing design is nonfunctional." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014).

### a)      Grin does not articulate the specific features of its putative trade dress.

A claim of trade dress infringement "requires an articulation of the specific features of the distinct trade dress sought to be protected." *State Farm Fire & Cas. Co. v. Hines*, No. 21-2354, 2022 WL 7973331, at *3 (3d Cir. Oct. 14, 2022). Only after the claimant has made this articulation "'can the court and the parties coherently define exactly what the trade dress consists of and determine whether that trade dress is valid and if what the accused is doing is an infringement.'" *Id.* (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8.3 (5th ed. 2022 update)). Thus, allegations that do not separate out and identify the particular elements of the putative trade dress fail to state a claim. *See, e.g.*, *id.* (no claim stated where the complaint did "not contain the requisite description of the specific features of a trade dress that it seeks to protect"); *Fair Wind*, 764 F.3d at 309 (affirming dismissal of trade dress claim because plaintiff "failed to give Defendants adequate notice of what overall look it wishes to protect."); *Conopco, Inc. v. WBM, LLC*, No. 21-14205, 2023 WL 2570207, at *4 (D.N.J. Mar. 20, 2023) (same); *Digital Dream Labs, LLC. v. Living Tech. (Shenzhen) Co.*, 587 F. Supp. 3d 305, 328 (W.D. Pa. 2022) (same).

Grin's allegations are deficient in two ways.

First, rather than list out specific, tangible elements of its design that it might consider distinctive and non-functional, Grin instead offers a collection of amorphous concepts: "the shape, overall look and feel, sleek aesthetic, simplicity, and presentation of the Grin Scope." D.I. 126-3 at 84, ¶ 60. Absent a more precise description, it is not possible to evaluate, for example, whether the design of Grin's dental scope is "incidental, arbitrary or ornamental." *Shire*, 329 F.3d at 353.

Second, even if Grin's amorphous concepts could be categorized as specific features, Grin has impermissibly left its definition open-ended. *Id.* (defining the "identifying elements" of Grin's trade dress as "*including* the shape, overall look and feel, sleek aesthetic, simplicity, and presentation of the Grin Scope") (emphasis added). Indefinite definitions such as Grin's are subject to dismissal. *Digital Dream*, 587 F. Supp. 3d at 328 (enumerating cases in which "[c]ourts have dismissed trade dress claims where language does not circumscribe the exact trade dress that a party is seeking to protect"). Accordingly, Grin's allegations fail to provide "adequate notice of what overall look it wishes to protect." *Fair Wind*, 764 F.3d at 310.

> **b)** **Grin does not plausibly allege facts to establish that its product design is non-functional.**

"Trade dress is limited to designs that identify a product's source. It does not safeguard designs that are functional—that is, useful." *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 253 (3d Cir. 2021), as amended (Mar. 10, 2021). Courts are careful not to overextend trade dress protection in the realm of product design "because 'product design almost invariably serves purposes other than source identification.'" *Id.* at 256 (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)). "The functionality doctrine keeps trademarks from usurping the place of patents" by allowing competitors to copy unpatented functional designs, even if copying would confuse consumers about a product's source." *Id.*

"[T]he Supreme Court recognizes several ways to show that a product feature is functional," including if (i) it "is essential to the use or purpose of the article," (ii) it "affects the cost or quality of the article," (iii) the "exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage," or (iv) it is "designed or developed chiefly from the point of view of use." *Id.* at 257 (citation omitted). At bottom, a "design is functional if it is useful for anything beyond branding." *PIM Brands Inc. v. Haribo of Am. Inc.*, No. 22-2821, 2023 WL 5763347, at *2 (3d Cir. Sept. 7, 2023). It is the claimant's burden to plead facts that would prove that its putative trade dress is non-functional. *Shire*, 329 F.3d at 354; *Fair Wind*, 764 F.3d at 310 (affirming dismissal based on unarticulated trade dress).

Grin's allegations fail to establish the required non-functionality element for two reasons.

First, as with Grin's failure to articulate particular elements of its trade dress, Grin does not specify which "[c]ertain aspects" are designed for functional purposes and which "[o]ther aspects" are "not dictated by function." D.I. 126-3 at p. 75, ¶ 12. Grin thus does not "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

Second, rather than show non-functionality, Grin alleges that its design serves a functional purpose: "in the teledental market, where untrained customers are responsible for inserting the scope into their own mouths, doctors and customers will be drawn to a scope that *looks* inviting, simple, and comfortable to a lay person." D.I. 126-3 at p. 75, ¶ 12. It is difficult to conceive of how a monopoly on comfortable designs would not "put competitors at a significant non-reputation-related disadvantage." *Ezaki Glico*, 986 F.3d at 257 (quoting *TrafFix*, 532 U.S. at 32). Because Grin's own pleading alleges its product is functional, its trade dress claim is futile. *Fair Wind*, 764 F.3d at 310; *Design With Friends, Inc. v. Target Corp.*, 2022 WL 4448197, at *2 (D.

19

Del. Sept. 23, 2022) (dismissing trade dress claim where plaintiff alleged that claimed elements were "designed to be 'consumer friendly and instantly-usable'"); *Bath Auth., LLC v. Anzzi LLC*, 2018 WL 5112889, at *6 (E.D. Pa. Oct. 19, 2018) (dismissing trade dress claim where plaintiff did not allege how the elements created a nonfunctional look and feel).

### 3.   Grin Does Not Plead a Violation of the DTPA (Count III)

Grin's Count III brings a claim under the Delaware Deceptive Trade Practices Act. A claim under the DTPA, like a claim under the Lanham Act, requires proof that the asserted trademark or trade dress is valid (*i.e.*, legally protectable). *See Keurig, Inc. v. Sturm Foods, Inc.*, 2012 WL 4049799, at *9 (D. Del. Sept. 13, 2012), *judgment entered*, 2012 WL 12896333 (D. Del. Nov. 2, 2012), and *aff'd*, 732 F.3d 1370 (Fed. Cir. 2013). As explained above, Grin's asserted trade dress is invalid because Grin did not (i) articulate the claimed features or (ii) show that any such elements are non-functional. Accordingly, Grin's DTPA claim, too, fails.

### D.   Grin Did Not Comply with the Meet-and-Confer Requirement as to Proposed Counterclaim Count III.

Finally, Grin's motion for leave to amend is procedurally deficient with respect to Count III of its counterclaims – Grin's DTPA claim – due to Grin's failure to include Count III in the draft amended answer that it provided to DM. None of Grin's DTPA allegations in paragraphs 65 through 71 of the proposed amended complaint were included in the February 8 draft shared with DM. *See* Ex. 8. Nor were these additional allegations discussed at the meet and confer on February 12. As such, Grin did not comply with its obligations under the local rules and leave to amend can be denied with respect to Count III on that basis alone. *See* D. Del. LR 7.1.1.

## VI.   CONCLUSION

For these reasons, DM respectfully requests that Grin's motion for leave to amend be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

_____
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

George F. Pappas
Einar Stole
Laura Marie Martin
Jia Hui Jiang
William Meyer*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
(202) 662-6000

Michael E. Bowlus
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA  94105-2544
(415) 591-6000

Sinan Utku
COVINGTON & BURLING LLP
22 Bishopsgate
London, EC2N-4BQ
+44 20 7067 2000

*Member of the Bar of New York, District of
Columbia Bar membership pending; supervised
by principals of the Firm.*

February 28, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 28, 2024, upon the following in the manner indicated:

David E. Moore, Esquire                                               *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
Andrew M. Moshos, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant*

James C. Yoon, Esquire                                               *VIA ELECTRONIC MAIL*
Alexander Miller, Esquire
Jeffrey Nall, Esquire
Christopher D. Mays, Esquire
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Granville C. Kaufman, Esquire                                     *VIA ELECTRONIC MAIL*
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real
San Diego, CA  92130
*Attorneys for Defendant*

Talin Gordnia, Esquire                                               *VIA ELECTRONIC MAIL*
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA  90067
*Attorneys for Defendant*

*/s/ Megan E. Dellinger*
_____
Megan E. Dellinger (#5739)

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 6, 2024, upon the following in the manner indicated:

David E. Moore, Esquire                                           *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
Andrew M. Moshos, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant*

James C. Yoon, Esquire                                           *VIA ELECTRONIC MAIL*
Alexander Miller, Esquire
Jeffrey Nall, Esquire
Christopher D. Mays, Esquire
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA  94304
*Attorneys for Defendant*

Granville C. Kaufman, Esquire                                    *VIA ELECTRONIC MAIL*
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real
San Diego, CA  92130
*Attorneys for Defendant*

Talin Gordnia, Esquire                                           *VIA ELECTRONIC MAIL*
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA  90067
*Attorneys for Defendant*

*/s/ Megan E. Dellinger*
_____
Megan E. Dellinger (#5739)