**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DENTAL MONITORING, §
*Plaintiff*, §
v. §
GET-GRIN INC., §
*Defendant*. §

Civil Action No. 22-647-WCB

**FILED UNDER SEAL**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dental Monitoring has sued defendant Get-Grin Inc., for patent infringement, asserting a total of 25 claims from four patents directed to methods of capturing and analyzing dental images. On March 13, 2024, defendant Get-Grin Inc. moved for a stay pending the resolution of challenges to the asserted claims that are pending in four proceedings before the Patent and Trademark Office ("PTO"). Dental Monitoring filed a response opposing a stay on March 27, 2024, and Get-Grin submitted a reply on April 3, 2024. Get-Grin's motion is granted, and this case will be stayed pending the conclusion of the proceedings before the PTO.

**BACKGROUND**

There are four relevant proceedings in train before the PTO. First, a third party, Align Technology, Inc., has an *inter partes* review proceeding pending before the Patent Trial and Appeal Board ("PTAB") involving claims 1–15 of Dental Monitoring's U.S. Patent No. 10,775,409 ("the '409 patent"). Second, an *ex parte* reexamination proceeding has been instituted at Get-Grin's behest involving Dental Monitoring's U.S. Patent No. 11,532,079 ("the '079 patent"). Third, an *ex parte* reexamination proceeding has been instituted at Get-Grin's behest involving Dental Monitoring's U.S. Patent No. 11,599,997 ("the '997 patent"). Fourth, there is a

pending reexamination request by Get-Grin involving Dental Monitoring's U.S. Patent No. 11,314,983 ("the '983 patent"). The review proceedings relating to the three patents on which review has been instituted cover all the claims from those patents that have been asserted against Get-Grin. The requested reexamination of the '983 patent would cover all the claims from that patent that Dental Monitoring has asserted against Get-Grin.

Align Technology, Inc., filed its petition for *inter partes* review of the '409 patent on August 31, 2023. The PTAB instituted review on March 5, 2024. Get-Grin filed its request for *ex parte* reexamination of the '079 patent on February 2, 2024; its request for *ex parte* reexamination of the '997 patent on February 14, 2024; and its request for *ex parte* reexamination of the '983 patent on March 1, 2024. The PTAB granted Get-Grin's request regarding the '079 patent on February 21, 2024, and the request regarding the '997 patent on March 6, 2024. Get-Grin states that an institution decision with respect to the request directed to the '983 patent is expected within the next month or two. Based on the prior institution decisions and the similarity between the subject matter of the '983 patent and that of the other patents on which institution was granted, Get-Grin suggests that there is a high likelihood that institution will be granted as to the '983 patent as well. Dental Monitoring does not take issue with that contention.

The complaint in this case was filed on May 16, 2022. At that time, Dental Monitoring asserted infringement of only the '983 and '409 patents. On April 20, 2023, Dental Monitoring brought a second action asserting infringement of the '079 and '997 patents. The two actions have been consolidated. Pursuant to a stipulation by the parties, the deadline for fact discovery was extended to March 29, 2024, and the deadline for expert discovery was extended to November 7, 2024. Briefing on claim construction has been completed, but the court has not yet held a hearing on claim construction or issued a claim construction order. Fact discovery remains open, as both

parties have outstanding written discovery requests. No depositions have been taken. Expert discovery has not yet commenced. Trial has been scheduled for May 19, 2025.

On March 13, 2024, Get-Grin filed this motion to stay all proceedings in this case pending the conclusion of the PTO's review of the four patents in suit. Dkt. No.147. Get-Grin argued that the PTO's review could lead to the cancellation of some or all of the claims asserted by Dental Monitoring, and that even if only some of the claims are canceled, the result would be to simplify the proceedings in this court. Dkt. No. 148. Dental Monitoring filed a response on March 27, 2024, opposing the motion for a stay. Dkt. No. 155. On April 3, 2024, Get-Grin filed a reply in support of its motion. Dkt. No. 157.

## DISCUSSION

The question whether to stay district court proceedings pending reexamination and *inter partes* review proceedings that are pending before the PTO has arisen frequently in recent years, particularly in the years since the enactment of the Leahy-Smith America Invents Act in 2011. The principles governing that question have been developed by courts in numerous cases involving different types of post-grant proceedings, including reexamination, *inter* partes review, post-grant review, and covered business methods ("CBM") review.[1]

[1] I have issued a number of opinions on this subject in this district and in the Eastern District of Texas. *See, e.g.*, *Prolitec Inc. v. Scentair Techs., LLC*, No. 20-984, 2023 WL 5037173 (D. Del. Aug. 8, 2023); *TC Tech. LLC v. Sprint Corp.*, No. 16-153, 2021 WL 4521045 (D. Del. Oct. 4, 2021); *British Telecomms. PLC v. IAC/InteractiveCorp.,* No. 18-366, 2020 WL 5517283 (D. Del. Sept. 11, 2020); *British Telecomms. PLC v. IAC/InteractiveCorp.,* No. 18-366, 2019 WL 4740156 (D. Del. Sept. 27, 2019); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2019 WL 3943058 (D. Del. Aug. 21, 2019); *CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, 2019 WL 11023976 (E.D. Tex. Feb. 14, 2019); *CyWee Grp. v. Huawei Device Co.*, No. 2:17-cv-495, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018); *NFC Tech LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 106911 (E.D. Tex. Mar. 11, 2015). At the risk of redundancy, I will restate the principles governing the issuance of such stays, borrowing heavily from the cited prior opinions.

It is well settled that the power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). That inherent authority includes the discretion to stay judicial proceedings pending post-grant proceedings, including reexamination, that will consider the validity of an issued patent. *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (The court has "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent."); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (Courts have inherent power to stay proceedings, "including the authority to order a stay pending conclusion of a PTO reexamination."); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("When a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved.").

While the authority of district courts to stay litigation pending post-grant proceedings in the PTO was well established before the AIA, the practice has become more common following the enactment of that statute. Over the past ten years, district courts have come to consider three factors when determining whether to grant a stay pending PTO proceedings with respect to a patent in suit: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Prolitec*, 2023 WL 5037173, at *2 (quoting *Princeton Digit. Image Corp. v. Konami Digit. Entm't Inc.*, No. CV 12-1461, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases)). Courts have recognized that granting a stay is particularly justified

when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC*, 2015 WL 1069111, at *1 (citing cases); *see also Novoluto GmbH v. Uccellini LLC,* No. 6:20-cv-2284, 2021 WL 2251911, at *2 (D. Ore. May 19, 2021); *RetailMeNot, Inc. v. Honey Sci. LLC*, No. 18-937, 2020 WL 373341, at *3 (D. Del. Jan. 23, 2020); *Nasdaq, Inc. v. IEX Grp., Inc.,* No. 18-3014, 2019 WL 8268544, at *5 (D.N.J. Sept. 13, 2019).

Courts have adopted those principles based in part on guidance from Congress in several forms. Most recently, Congress addressed the subject of stays of litigation pending PTO post-grant proceedings in the 2011 legislation dealing with CBM review. In the uncodified portion of the AIA directed to CBM review, Congress set forth four factors governing whether a stay should be granted pending CBM review by the Patent Trial and Appeal Board ("PTAB"). Those four factors are:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011).

Those statutory factors largely track the three factors traditionally used by courts in determining whether to grant stays pending post-grant proceedings, with a fourth factor added. *See Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489 (D. Del. 2013) ("This [CBM] statutory test closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination . . . ."). The fourth factor, which requires an inquiry into whether a stay will reduce the burden of litigation on the parties and the court, was


intended to ensure that courts apply their discretion to grant stays liberally so as to minimize the duplicative litigation of patent validity issues in parallel forums.[2] *See IOENGINE*, 2019 WL 3943058, at *3.

While Congress's four-factor test for granting stays in the CBM context does not expressly extend to other types of post-grant proceedings, such as *ex parte* reexaminations, courts have found that the policy considerations governing the issuance of stays are similar with respect to all post-grant proceedings. For that reason, the Federal Circuit and various district courts have held that courts may weigh the fourth factor set forth in the CBM statute when considering staying cases that are co-pending with other types of post-grant proceedings. *See, e.g.*, *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016); *British Telecomms.*, 2020 WL 5517283, at *3; *Neuro Cardiac Techs., LLC v. LivaNova, Inc.*, No. H-18-1517, 2018 WL 4901035, at *2 (S.D. Tex. Oct. 9, 2018); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346, 2013 WL 6044407, at *2 (W.D. Wis. Nov. 14, 2013). As other courts have done, I will address the "burden of litigation" factor as a component of the factor directed to "simplifying the issues."

The legislative history of the AIA makes it apparent that Congress intended for district courts to be liberal in granting stays pending CBM review. As Senator Schumer observed regarding the CBM review provision, Congress intended to place "a very heavy thumb on the scale in favor of a stay being granted" once the PTAB instituted CBM review proceedings. 157 Cong.

[2] The four-factor test was added to the AIA through an amendment offered by Senator Charles Schumer. The provision was added in order to encourage district courts to issue stays when district court litigation and post-grant proceedings were co-pending. Senator Schumer commented: "Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time. This is unacceptable, and would be contrary to the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation." 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011).

Rec. S1363 (daily ed. Mar. 8, 2011); *see Market-Alerts*, 922 F. Supp. 2d at 490 n.4; *British Telecomms.*, 2019 WL 4740156, at *3.

Congress's desire to enhance the role of the PTO in deciding validity questions and to limit the burden of litigation on courts and parties was not restricted to CBM review proceedings. The AIA's legislative history indicates that Congress viewed both CBM review and *inter partes* review as serving the policy of adjudicating patent validity in an efficient manner. *See* H. Rep. No. 112-98, Part I, at 48 (2011) (statutory post-grant proceedings were designed to be "quick and cost effective alternatives to litigation"); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (*inter partes* review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents") (statement of Sen. Charles Grassley); *id.* at S5319 (daily ed. Sept. 6, 2011) (post-grant proceedings, including *inter partes* review, were meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Jon Kyl); *see NFC Tech.*, 2015 WL 1069111, at *5; *see also* Joel Sayres & Julie Wahlstrand, *To Stay or Not to Stay Pending IPR? That Should Be a Simpler Question*, 17 CHI.-KENT J. INTELL. PROP. 52, 56–58 (2018) (discussing indications of Congress's intent in enacting the *inter partes* review framework).

In light of the similar policies underlying the CBM and *inter partes* review proceedings, it is not surprising that courts have applied generally similar analysis to requests for stays in both settings. Moreover, given the close parallels between *inter partes* review and other forms of post-grant proceedings, courts have applied similar stay analysis in the context of reexaminations, such as the *ex parte* reexamination at issue in this case. See *Prolitec*, 2023 WL 5037173, at *3; *TC Tech.*, WL 4521045, at *3; *British Telecomms.*, 2020 WL 5517283, at *4; *Goldfinch Design Studio LLC v. Collector's Universe, Inc.*, No. 20-2542, 2020 WL 5017351, at *1 (D.N.J. Aug. 25, 2020);

*BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-cv-133, 2013 WL 2462105, at *1 n.1 (D. Del. June 6, 2013); *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505 (D. Del. 2012); *Round Rock Rsch. LLC v. Dole Food Co.*, Nos. 11-1239 et al., 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012). Courts have applied similar analysis in the two settings in recognition of the fact that the benefits of reexamination are the same as those served by CBM review: giving the PTO an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of the need to decide some patent validity issues, and saving the courts from adjudicating infringement claims based on patents of questionable validity. *See also Gould*, 705 F.2d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).").

That point is made clear by the legislative history of the 1980 statute authorizing the PTO to conduct administrative reexaminations of issued patents. Early versions of the 1980 statute contained a section providing for a stay of court proceedings during reexamination. The stay provision was omitted from the final version of the statute on the ground that it was unnecessary. *See id.* The House Report on the bill that became the 1980 statute explained that a stay provision was unnecessary because "such power [to stay] already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." H.R. Rep. No. 96-1307, part 1 (1980), at 4. Moreover, the House Report anticipated that reexaminations would "provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner," and that reexaminations would permit the validity of patents to be tested in the PTO "where the most expert opinions exist and at much reduced costs." *Id.*; *see Ethicon*, 849 F.2d at 1426.

Because of the benefits conferred by PTO post-grant proceedings, courts have concluded that the "liberal policy" in favor of staying cases pending CBM review also applies to staying cases pending other post-grant proceedings. *See British Telecomms.*, 2020 WL 5517283, at *4 (citing cases). In addition to the numerous decisions cited in *British Telecommunications*, *see id.*, courts in many other cases have noted, and acted on, the liberal policy in favor of issuing stays pending post-grant proceedings. *See, e.g.*, *Prolitec*, 2023 WL 5037173, at *4; *AbCellera Biologics, Inc. v. Berkeley Lights, Inc.*, No. 20-cv-8624, 2021 WL 4499231 , at *1 (N.D. Cal. Aug. 26, 2021); *ClearPlay v. DISH Network LLC*, No. 2:14-cv-191, 2021 WL 2515008, at *2 (D. Utah June 18, 2021); *Kirsch Rsch. & Dev., LLC v. GAF Materials, LLC*, No. CV 20-13683, 2021 WL 2434082, at *2 (D.N.J. June 15, 2021); *Novoluto*, 2021 WL 2251911, at *3; *Automated Layout Techs., LLC v. Precision Steel Sys., LLC*, No. 4:20-cv-3127, 2021 WL 1820433, at *4 (D. Neb. May 6, 2021); *Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*, No. CV 19-6224, 2021 WL 831028, at *2 (C.D. Cal. Feb. 25, 2021); *Mobile Tech, Inc. v. Invue Sec. Prods. Inc.*, No. 3:18-cv-52, 2020 WL 9173107, at *2 (W.D.N.C. Mar. 5, 2020).

Although the three-factor test set forth above informs the court's decision whether to issue a stay pending post-grant proceedings, that test merely provides general guidance; it is not a rigid template for decision. Rather, district courts retain the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA*, 830 F.3d at 1362. "[U]ltimately the Court must decide stay requests on a case-by-case basis," and whether a stay should be granted turns in each case on the totality of the circumstances. *British Telecomms.*, 2020 WL 5517283, at *5. Courts in numerous other cases have also ruled that stay requests must be decided on a case-by-case basis. *See, e.g.*, *id.* (collecting cases); *IOENGINE*, 2019 WL 3943058, at *3 (collecting additional cases).

With that caveat, I turn to each of the principal specific factors courts have recognized as bearing on whether to grant a motion for a stay pending post-grant proceedings in the PTO.

### *A. Simplification of the Issues*

The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial. As explained in *NFC Technology*, with respect to *inter partes* review,

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed. Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

2015 WL 1069111, at *4; *RetailMeNot*, 2020 WL 373341, at *3 (quoting *IOENGINE*, 2019 WL 3943058, at *8). The same is true for *ex parte* reexaminations. *See In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). Put more simply, it makes sense to ask the agency that issued the patent in the first place to decide whether it made a mistake, rather than to ask a court and eight jurors–strangers to the original issuance decision—to take the lead in second-guessing the PTO's issuance decision.

In *British Telecommunications*, the court described the litigation before it as "a prime example of a case in which a reexamination decision has the greatest likelihood of simplifying issues at trial." 2020 WL 5517283, at *9. The PTO in that case granted reexamination of the sole claim asserted in the litigation, and the court issued the stay after the PTO granted reexamination, but before the examiner issued an initial decision. *Id.* at *2. The same is true here for the two patents on which the PTO has instituted reexamination and the one patent in which the PTAB has instituted *inter partes* review. Although the PTO has not yet acted on the reexamination request with respect to the fourth Dental Monitoring patent, it seems highly likely that reexamination will

be instituted on that patent as well, in light of the close similarity of that patent to those as to which reexamination has already been instituted.

In *VirtualAgility, Inc. v. Salesforce.com, Inc.*, the Federal Circuit noted the significance of the simplification factor when post-grant proceedings are instituted on all the claims at issue in the district court litigation. 759 F.3d 1307, 1314 (Fed. Cir. 2014). The court emphasized that CBM review had been instituted "on all asserted claims of the sole asserted patent." *Id.* The post-grant proceedings could therefore "dispose of the entire litigation," which the court referred to as "the ultimate simplification." *Id.*; *see also Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1372 (Fed. Cir. 2014) ("Certainly [the] simplification factor weighs more strongly in favor of a stay when *all* of the litigated claims" are undergoing review). The same is likely to be true here; and even if reexamination is not instituted with respect to the fourth patent, any decisions cancelling claims from the first three patents at issue will doubtlessly simplify the case before this court.

The Federal Circuit has made clear that it is inappropriate for a district court, in considering a motion for a stay pending post-grant review, to review the merits of the PTO's determination as to whether the claims are likely invalid. In *VirtualAgility*, the court made that clear in the analogous context of a motion for a stay pending CBM review:

> The district court erred as a matter of law to the extent that it decided to 'review' the PTAB's determination that the claims of the '413 patent are more likely than not invalid in the posture of a ruling on a motion to stay. . . . To do so would overwhelm and dramatically expand the nature of the stay determination. . . . The stay determination is not the time or the place to review the PTAB's decisions to institute a CBM proceeding.

759 F.3d at 1313; *see also Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1317 (Fed. Cir. 2015); *Benefit Funding Sys. v. Am. Cash Advance Ctrs. Inc.*, 767 F.3d 1383, 1386 (Fed. Cir. 2014).

Here, the examiner has determined that there is a substantial question of patentability with respect to two of the patents, and the PTAB has concluded that there is a reasonable likelihood that the requester will prevail with respect to at least one of the claims targeted in the *inter partes* review proceeding.

Dental Monitoring argues that the reexamination proceeding is unlikely to result in the cancellation of all the asserted claims of the patents being challenged in the post-grant proceedings. For support, Dental Monitoring relies on PTO statistics showing that *ex parte* reexamination results in all claims being canceled only 13.1 percent of the time, whereas confirmation of all claims occurs 20.9% of the time. Dkt. No. 155 at 14 (citing Dkt. No. 149-6 at 9).

What Dental Monitoring's interpretation of the reexamination statistics overlooks is that there is an approximately 79 percent chance that at least some claims of the two patents undergoing reexamination are likely to be canceled or amended. Even if the *inter partes* review and reexamination proceedings conclude without all the claims of all four patents being canceled, the cancellation or amendment of some of the claims is likely to nonetheless simplify the issues for trial, and save the resources of the parties and the court that would otherwise be expended in addressing claims that are no longer in the case. *See Prolitec*, 2023 WL 5037173, at *5. For that reason, the high likelihood that at least some of the claims will be canceled or modified weighs in favor of a stay. *See Round Rock*, 2012 WL 1185022, at *1 ("[W]ith so many claims in play, the law of probabilities makes it very likely that some of the claims will be rejected or modified, and others of them, even if neither rejected nor modified, will garner additional prosecution history that may be relevant to claim construction.").

In sum, the statistics cited by Dental Monitoring do not bolster its argument. To the contrary, they support Get-Grin's contention that the reexamination in this case is likely to result

in the cancellation or amendment of at least some of the asserted claims. I conclude that the reexamination proceeding is likely to simplify this litigation and reduce the burden on the parties and on the court by resulting in the cancellation or amendment of at least some of the asserted claims. The simplification/reduction of burden factor therefore cuts strongly in favor of granting a stay.

### *B. State of the Proceedings*

As noted, one of the factors courts have considered in determining whether to issue a stay pending post-grant proceedings is the state of the district court proceedings, i.e., how far along the district court case is at the time the motion for a stay is filed.

When the motion to stay was filed in this case, fact discovery had not closed and expert discovery had not begun.[3] Even now, no claim construction order has been issued, and no depositions have been taken. A trial date has been set, but is more than a year away.[4] Dental Monitoring argues that the case was already well advanced when the stay motion was filed, but I do not agree with that characterization.[5]

---

[3] The state of the proceedings in cases involving motions to stay pending post-grant review proceedings is determined as of the date that the motion to stay is filed. *See VirtualAgility*, 759 F.3d at 1317; *CyWee Grp.*, 2019 WL 11023976, at *6 n.3. In this case, that date was March 13, 2024.

[4] In the District of Delaware, trial dates are commonly set in the original scheduling order issued at the outset of the case, was done here. *See* Dkt. No. 14. The setting of a trial date is therefore not of any significance in this district, and in this case in particular, as a measure of how far along the case has progressed.

[5] Stays have been granted in a number of other cases that involved motions for a stay that were filed at times much later in the pretrial process than in this case. *See, e.g.*, *TC Tech.*, 2021 WL 4521045, at *7 (stay granted less than two months before trial); *British Telecomms.*, 2020 WL 5517283, at *5 (stay granted less than three months before trial); *AGIS Software Dev. LLC v. Google LLC*, No. 2:19-cv-361, 2021 WL 465424, at *3 (E.D. Tex. Feb. 9, 2021) (stay granted three months before trial); *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:19-cv-225, 2021 WL 121154, at *2 (E.D. Tex. Jan. 13, 2021) (stay granted six weeks before trial); *CyWee Grp.*, , 2019 WL 11023976, at *6–7 (stay granted three months before trial); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-11, 2016 WL 1162162, at *2 (E.D. Tex. Mar. 23,

While some of the pretrial proceedings in this case have been completed, a large portion of the remaining work in the case for the parties and the court lies in the future. The parties have not completed discovery, nor have they filed dispositive motions. As many courts have observed, the preparation for trial and trial itself are typically the most burdensome and expensive parts of the litigation. *See Prolitec*, 2023 WL 5037173, at *7; *British Telecomms.*, 2020 WL 5517283, at *6 (recognizing that "the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future"); *see also Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015) (holding that the district court abused its discretion when it denied a stay prior to trial, explaining that "[d]espite the substantial time and effort already spent in this case, the most burdensome task is yet to come"); *AGIS Software*, 2021 WL 465424, at *3 (Even after completion of discovery and pretrial briefing, with jury selection pending, "there remain significant resources yet to be expended by the parties."); *Ramot At Tel Aviv Univ.*, 2021 WL 121154, at *2 (same); *NFC Tech.*, 2015 WL 1069111, at *3 ("[I]t appears likely that the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future.").[6]

***C. Undue Prejudice or Clear Tactical Advantage***

The third factor that courts consider in determining whether to issue a stay of district court litigation pending post-grant proceedings is whether a stay would result in undue prejudice to the non-moving party or provide a clear tactical advantage to the moving party. In evaluating whether

---

2016) (stay granted within two months of trial); *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, No. 03-CV-2223, 2006 WL 1897165, at *8–10 (D. Colo. July 11, 2006) (stay granted less than three months before trial; court cited cases in which stays were granted as little as 20 days before trial).

[6] Dental Monitoring's assertion that the court has already had "a heavy investment in this case," Dkt. No. 155 at 16, is puzzling. So far, the court has been required to invest very little effort in this case. The court's investment is thus a non-factor in the analysis.

undue prejudice or a clear tactical advantage exists, courts in this district typically examine four sub-factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *IOENGINE*, 2019 WL 3943058, at *5 (collecting cases). The prejudice factor, unlike the others, cuts in favor of denying a stay, but only modestly.

Regarding the timing of the request for reexamination and the request for a stay, Get-Grin argues that in light of the court's schedule and Get-Grin's "modest resources," its reexamination requests were "neither dilatory nor aimed at obtaining a tactical advantage." Dkt. No. 157 at 3. Dental Monitory contends that the delay was both unreasonable and tactically motivated. To demonstrate Get-Grin's lack of diligence in seeking PTO review, Dental Monitoring points out that Get-Grin filed its initial invalidity contentions on January 11, 2023, and waited more than a year from then before submitting its requests for reexamination. Get-Grin responds by pointing out that its initial invalidity contentions did not include four of the seven references ultimately raised in Get-Grin's reexamination request for the '983 patent. That is to say that as of January 2023, Get-Grin had not yet assembled all the references that it would ultimately regard as necessary to support its request for reexamination of the '983 patent. Get-Grin's January 2023 invalidity contentions, moreover, were filed several months before Dental Monitoring added the '079 and '983 patents to the limitation. When those patents were added, Get-Grin's deadline for its invalidity contentions was reset to September 25, 2023. Dkt. No. 56.

At that time, Get-Grin added a prior art reference that was not included in its January 2023 contentions. In addition, several other references that were identified in Get-Grin's '983 reexamination request were not identified in either of its invalidity contentions. And the September 2023 invalidity contentions identified for the first time several items of asserted prior

art for the ’079 and ’997 reexamination requests that had not previously been included in Get-Grin’s earlier invalidity contentions. For those reasons, Get-Grin contends that the relevant period for assessing its delay in seeking reexamination is the five-month period between September 2023 and February 14 through March 1, 2024, when the reexamination requests were filed. Get-Grin adds that the timeliness issue regarding its requests for reexamination does not apply to the *inter partes* review petition filed by third-party Align Technology, as Get-Grin did not control the timing of that request.

As for the five-month period of delay between September 2023 and February 2024, Get-Grin notes that the litigation was very active during that period, involving claim construction briefing and discovery, and in light of the other demands in the case, that period of delay was not unreasonable.

The reasons for the delay in filing the requests for reexamination are plausible, but not entirely satisfactory as an explanation of why the request for reexamination were not filed for nearly 20 months from the filing of the initial complaint in this case and nearly a year after the filing of the second complaint. On the other hand, there is no indication that the delay was purposely designed to obtain a tactical advantage for Get-Grin. The fact that Get-Grin had not identified a number of prior art references by the time it prepared its January 2023 invalidity contentions tends to show that it was not purposely delay ing the filing of its reexamination requests for tactical reasons. In addition, the fact that the case was in active litigation during the period before the requests were filed, and the fact that Get-Grin is a small company with limited resources provides some justification for its delay, particular in the absence of any evidence that the delay was designed to prejudice Dental Monitoring. This factor thus cuts against a stay, but not to a compelling degree.

The second subfactor in the prejudice calculus is the timing of Get-Grin's motion for a stay once it filed its requests for reexamination. As to that subfactor, Get-Grin cannot be faulted. Get-Grin filed its motion only days after it filed the last of its three reexamination requests. This sub-factor thus favors issuance of the stay.

With respect to the sub-factor directed to the status of the review proceedings, this court and others have frequently issued stays after a request for *ex parte* reexamination was granted, but before the examiner reached an initial decision. *See, e.g.*, *British Telecomms.*, 2020 WL 5517283, at *2; *Goldfinch*, 2020 WL 5017351, at *1; *BodyMedia*, 2013 WL 2462105, at *1 n.1; *Ever Win Int'l*, 902 F. Supp. 2d at 504–05. Moreover, the potential burden of conducting appellate proceedings in the PTO does not constitute undue prejudice to Dental Monitoring, as it is likely that, even in the absence of a stay, the reexamination and a possible administrative appeal would be ongoing before any judgment in the district court litigation became final.

Finally, with respect to the sub-factor addressed to the relationship between the parties, it is undisputed that Dental Monitoring and Get-Grin are competitors, a factor that normally weighs against granting a stay. *See, e.g.*, *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958, 2013 WL 3013343, at *3–4 (D. Del. June 17, 2013); *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662, 2013 WL 424754, at *2–3 (D. Del. Jan. 31, 2013). However, when "there are a number of active firms in the relevant market," the fact that the parties are competitors carries less weight in the analysis. *Neste*, 2013 WL 424754, at *3.

On this issue, neither party has provided much by way of helpful guidance. Get-Grin asserts that there are other firms that operate in the same market as Dental Monitoring, and that Get-Grin is a relatively small player in that market. Dkt, No. 148 at 8 (citing Dkt No. 149-9, Exh. I at ¶ 26). Other than referring to Align as a major competitor of Dental Monitoring, however,

Get-Grin has offered very little evidence regarding the number of competitors and their significance compared to Get-Grin. Dental Monitoring, on the other hand, suggests that Get-Grin is a major competitor. Dkt. No. 155 at 10. Yet in so arguing, Dental Monitoring relies mainly on projections of revenue growth by Get-Grin, which are based on best-case-scenario hypotheses, together with evidence of a few particular cases in which Get-Grin has persuaded customers to switch to Get-Grin from Dental Monitoring. Dkt. No. 155-1, Exh. 2 and Exh. 10. Although it has been two years since the complaint was filed, Dental Monitoring has not shown that Get-Grin has experienced the kind of growth during that period that would post an imminent threat to Dental Monitoring's position in the market.

Thus, Dental Monitoring's complaint of potential injury is largely speculative. In its brief, Dental Monitoring argues that a stay would permit Get-Grin to expand its market share considerably. But in light of Get-Grin's small size and modest growth to date, it seems unlikely that a stay would permit Get-Grin to expand its share of the market considerably during the stay period to the point of substantially injuring Dental Marketing's position in the market.

A further, and related, consideration bearing on the issue of prejudice is that Dental Monitoring has not sought a preliminary injunction in this case. While that factor is not dispositive, it tends to undermine Dental Monitoring's argument that it is being severely prejudiced by the presence of Get-Grin's products in the 3. *See VirtualAgility*, 759 F.3d at 1319 ("[T]he fact that it was not worth the expense to ask for [a preliminary injunction] contradicts [the plaintiff's] assertion that it needs injunctive relief as soon as possible."). Other courts have considered the failure to seek a preliminary injunction as indicative that the plaintiff is not suffering severe prejudice from the fact that a competitor-defendant is putatively using its intellectual property to compete with it in the market. *See, e.g.*, *Neste Oil* Oyj, 2013 WL 424754, at *3; *Ever Win Int'l*

*Corp.,* 902 F. Supp. 2d at 511; *Masimo Corp. v. Wireless*, No. 19-cv-1100, 2021 WL 321481, at *5–6 (S.D. Cal. Feb. 1, 2021); *Divine Purse Co. v. Shepax*, No. 2:16-cv-291, 2017 WL 960638, at *4 (M.D. Fla. Mar. 13, 2017); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 14-245, 2014 WL 12600114, at *7 (D. Minn. Oct. 10, 2014); *Radio Sys. Corp. v. E. Mishan & Sons, Inc.*, No. 3-13-CV-383, 2014 WL 1870775, at *3 (E.D. Tenn. Mar. 28, 2014); *Schwendimann v. Arkwright Advanced Coating, Inc.*, No. 11-820, 2013 WL 12140482, at *5 (D. Minn. Dec. 20, 2013); *Pac. Bioscient Lab'ys, Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1067 (W.D. Wash. 2011); *Insituform Techs., Inc. v. Liqui-Force Servs. (USA), Inc.*, No. 08-11916, 2009 WL 1469660, at *2 (E.D. Mich. May 26, 2009); *Equipements de Transformation IMAC v. Anheuser-Busch Cos.*, 559 F. Supp. 2d 809, 816 (E.D. Mich. 2008).

In view of the four sub-factors bearing on the issue of undue prejudice to the patent owner or unfair tactical advantage to the patent challenger, I conclude that there is some risk of prejudice to Dental Monitoring based on the fact that the parties are direct competitors. However, in view of the fact that there are other firms in the relevant market, as well as the other factors bearing on the issue of prejudice, that risk does not weigh heavily in the analysis. As a result, the prejudice factor weighs only moderately in Dental Monitoring's favor. Put another way, any prejudice to Dental Monitoring from granting a stay is not "undue," and thus the "undue prejudice or clear tactical advantage" factor does not counsel against granting a stay in this case.

***D. Conclusion***

After weighing all the factors that bear on whether to grant a stay pending reexamination of the asserted claims of the four asserted patents, I conclude that a stay of this action is warranted. Although the risk of prejudice to Dental Monitoring weighs somewhat against granting a stay, that risk is outweighed by the likelihood that the reexamination proceedings will simplify the issues in

this case and that the most burdensome portions of the district court proceedings lie in the future. The balance of the factors, especially in view of the congressional policy that courts should be liberal in stay cases when parallel post-grant proceedings are pending leads me to exercise my discretion in favor of granting the motion for a stay. Accordingly, all further proceedings in this matter are stayed until the proceedings before the PTO are completed.

* * * * *

The parties have filed each of their briefs in this case under seal, and marked them with the highest level of confidentiality permitted under the court's protective order—"Highly Confidential—Attorneys' Eyes Only." Out of an abundance of caution, I have filed this order under seal. Within three days, the parties are directed to advise the court by jointly submitted letter if there are any portions of this order that should remain under seal and, if so, to explain why. An unsealed version of this order will be docketed after counsel's letter is received.

IT IS SO ORDERED.

SIGNED this 9th day of April, 2024.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE